**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

KELVIN DEXTER,

     Plaintiff - Appellee,

  and

ARTYSHA HOLSTON,

     Plaintiff,

v.

FORD MOTOR COMPANY; STATE
OF UTAH; HANK GALETKA,

     Defendants,

  and

JASON BOSKO, individually;
BARRY SANNS, individually,

     Defendants - Appellants.

No. 02-4122
(D. Utah)
(D.Ct. No. 2:01-CV-595 C)

---

KELVIN DEXTER,

     Plaintiff - Appellant,

  and

ARTYSHA HOLSTON,

     Plaintiff,

No. 02-4137
(D. Utah)
(D.Ct. No. 2:01-CV-595 C)

v.

FORD MOTOR COMPANY; STATE
OF UTAH; JASON BOSKO,
individually; BARRY SANNS,
individually,

     Defendants,

  and

HANK GALETKA,

     Defendant - Appellee.

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

---

Jason Bosko and Barry Sanns appeal the district court's denial of their

motions to dismiss Kelvin Dexter's federal and state constitutional claims on the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

grounds of qualified immunity (Case No. 02-4122).[1] Dexter appeals the court's

dismissal of his similar claims against Hank Galetka (certified under Fed. R. Civ.

P. 54(b) as a final judgment) on the grounds of qualified immunity (Case No. 02-

4137). The cases are consolidated on appeal. Exercising jurisdiction under 28

U.S.C. § 1291, we reverse the district court's order denying qualified immunity to

Bosko and Sanns, and affirm its order granting qualified immunity to Galetka on

Dexter's federal claims. We remand to the district court with instructions to

dismiss the supplemental state claims.

### *Factual Background*

Dexter alleges the following facts in his amended complaint. On December

7, 2000, Dexter was an inmate at the Utah State Prison where Galetka served as

warden. Bosko and Sanns were correctional officers at the prison. They placed

Dexter, along with eight other inmates, in a fifteen passenger van equipped with

seatbelts for transport to the Beaver County Jail. The prison had a policy that all

inmates in transport were to be seatbelted. Because the inmates were handcuffed

and shackled, they were unable to seatbelt themselves. Some of the inmates

requested to be seatbelted (Dexter did not) but Bosko and Sanns did not honor the

inmates' requests. Galetka was aware that officers routinely failed to seatbelt

---

[1]An order denying qualified immunity is immediately appealable notwithstanding the fact a final judgment has not been entered. *Mitchell v. Forsyth,* 472 U.S. 511, 530 (1985); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001).

inmates in transport, contrary to prison policy. During transport, Bosko drove, accompanied by Sanns. Traveling south on Interstate 15, Bosko was speeding. His attention was diverted from the highway when he reached for food or drink. At this time, the van strayed onto the median, Bosko lost control of the van, and it eventually rolled, ejecting Dexter. As a result of the accident, Dexter is now a quadriplegic.

### District Court

In his amended complaint, Dexter asserts a claim under 42 U.S.C. § 1983 alleging Galetka, Bosko and Sanns violated his rights under the Eighth Amendment to the United States Constitution by failing to seatbelt him during the prison transport. He also claims the three defendants violated his rights under the Utah Constitution. All three defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6) on the grounds of qualified immunity.

As to the federal claim, with respect to Bosko and Sanns, the district court denied the motion to dismiss, concluding Dexter clearly established his Eighth Amendment rights were violated by failure to seatbelt coupled with reckless operation of the transport vehicle. With respect to Galetka, the district court granted the motion to dismiss based on Dexter's failure to allege that Galetka knew the officers drove recklessly when transporting inmates. Based on similar

-4-

reasoning, the district court denied qualified immunity for Bosko and Sanns and upheld it for Galetka on Dexter's state law claims.

### *Standard of Review*

We review de novo the dismissal of a complaint under Rule 12(b)(6) for failure to state a claim. *Sutton v. Utah State Sch. for Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999); *see also Currier v. Doran,* 242 F.3d 905, 911 (10th Cir.) (standard of review of a 12(b)(6) dismissal on grounds of qualified immunity is de novo), *cert. denied,* 534 U.S. 1019 (2001)). "[A]ll well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton,* 173 F.3d at 1236. A 12(b)(6) motion "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati,* 258 F.3d 1167, 1174 (10th Cir. 2001) (quotation omitted), *cert. denied,* 537 U.S. 823 (2002). Dismissal is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sutton,* 173 F.3d at 1236 (quotations omitted).

### *Discussion*

Qualified immunity, if established, defeats a claim because it is "an immunity from suit rather than a mere defense to liability . . . ." *Saucier v. Katz,* 533 U.S. 194, 200 (quotation and emphasis omitted), *remanded to* 262 F.3d 897

(9th Cir. 2001). Whether a defendant is entitled to qualified immunity is based on a two-tier inquiry. First, we ask whether the facts, "[t]aken in the light most favorable to the party asserting the injury," demonstrate that the defendant's conduct violated a constitutional right. *Id.* at 201. Second, we inquire "whether the right was clearly established." *Id.* The plaintiff carries the burden of proof on each tier. *Albright v. Rodriguez,* 51 F.3d 1531, 1534-35 (10th Cir. 1995). If no constitutional violation occurred, there is no need to determine whether the constitutional right was clearly established. *Saucier,* 533 U.S. at 201.

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 828 (1994) (quotation omitted). Inmates must be "furnished with the basic human needs, one of which is reasonable safety." *Helling v. McKinney,* 509 U.S. 25, 33 (1993) (quotation omitted). However, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quotation and citation omitted). Nonetheless, the Eighth Amendment protects against "sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering . . . ." *Helling,* 509 U.S. at 34.

The test for an Eighth Amendment violation has both an objective and subjective requirement. *Farmer,* 511 U.S. at 834. The objective requirement is

-6-

met when an inmate alleges a deprivation that is "sufficiently serious." *Id.* (quotation omitted). For a claim based on failure to insure safety, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," *id.* at 834, otherwise described as an "excessive risk to inmate health or safety," *id.* at 837, one "sure or very likely to cause serious illness and needless suffering." *Helling,* 509 U.S. at 33. As to the subjective requirement, "deliberate indifference describes a state of mind more blameworthy than negligence," *Farmer,* 511 U.S. at 835, but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* The test is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In short, liability requires "consciousness of a risk." *Id.* at 840.

With these principles in mind, we turn to the claims of the parties and conclude that Dexter has failed to meet the objective requirement for an Eighth Amendment violation. This being so, we need not examine whether Dexter has met the subjective requirement. Also, since Dexter has failed to establish the officers violated a constitutional right, it is not necessary to inquire whether that right was clearly established. *Saucier,* 533 U.S. at 201.

-7-

### (A) Bosko and Sanns

We begin by observing that the district court incorrectly characterized Dexter's federal claim. According to the court, "Dexter contends that Defendants violated his Eighth Amendment right against cruel and unusual punishment pursuant to § 1983 when they failed to seat belt him while driving recklessly." (Appellant App. [02-4122] at 138.) Our review of the record, Dexter's Answer Brief (02-4122) and his Opening Brief (02-4137) uncovers no contention by Dexter that failure to seatbelt, combined with reckless driving, undergirds his § 1983 claim.[2] He contends failure to seatbelt, standing alone, supports his claim. Although Dexter does aver in his factual predicate that Bosko was speeding and his attention was diverted from the road while he reached for food or drink, he alleges these facts in the nature of explaining how the accident occurred–but Does not allege reckless driving.[3] Dexter himself agrees an allegation of reckless driving is not a part of his Eighth Amendment claim: "The district court erroneously relied on a failure to seat belt along with reckless driving in order to establish an Eighth Amendment violation." (Appellant Br. [02-4137] at 6.) "[A]s

---

[2] As we later discuss, Dexter alleges reckless driving only in his state claims.

[3] We might ordinarily remand to provide Dexter an opportunity to amend his complaint to state reckless driving as an element of his Eighth Amendment claim. However, he did not move for an additional amendment of his complaint in the district court, and the record and briefs are bereft of any indication Dexter advances this theory or possesses sufficient facts to support it.

argued in . . . Case No. 02-4122, the failure to seat belt [alone] deprives inmates of reasonable safety measures and, hence, transgresses Eighth Amendment protections." (*Id.*) Accordingly, based on this record, we examine whether failure to seatbelt, standing alone, states a constitutional violation.[4]

We first examine the objective component of the test for an Eighth Amendment violation, *i.e.*, whether failure to seatbelt inmates poses a substantial risk of serious harm. We conclude it does not. We have already indicated an Eighth Amendment claim based on failure to insure inmate safety must allege a risk that has been variously described as "life-threatening," *Helling,* 509 U.S. at 33, "sufficiently serious," *Farmer,* 511 U.S. at 834 (quotation omitted), "substantial," *id.,* "excessive," *id.* at 837, and "sure or very likely to cause" serious injury. *Helling,* 509 U.S. at 33. These standards are not met in this case. The connection between a failure to seatbelt and the risk of serious injury, even if arguably evident under state tort law, is insufficient for purposes of constitutional analysis.[5] The risk of a motor vehicle

---

[4]Dexter concedes that violation of an express prison policy requiring seatbelting of inmates cannot provide the basis for establishing an Eighth Amendment violation. (Appellant Reply Br. [02-4137] at 5.) *See also Davis v. Scherer,* 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."). In a related context (due process), the Supreme Court has held that "[t]he State may choose to require procedures for reasons other than protection against deprivation of substantive rights . . . but in making that choice the State does not create an independent substantive right." *Olim v. Wakinekona,* 461 U.S. 238, 250-51 (1983) (footnote omitted).

[5]"Although a § 1983 claim has been described as a species of tort liability, it is perfectly clear that not every injury in which a state official has played some part is

accident is dependent upon a host of factors unrelated to the use of seatbelts, *viz.,* vehicular condition, time of day, traffic, signage, warning lights, emergency circumstances, weather, road conditions, and the conduct of other drivers. The eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted. While the severity of harm should an accident occur may be exacerbated by the failure to seatbelt, it is not directly occasioned by it and the other variables must be included in the risk equation. Thus, we conclude a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension.[6]

---

actionable under that statute. To hold otherwise would render § 1983 and the Fourteenth Amendment to the United States Constitution a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Norton v. Liddel,* 620 F.2d 1375, 1378 (10th Cir. 1980) (quotations and citations omitted).

[6]There has been some doubt expressed over the years as to whether the cruel and unusual punishment clause of the Eighth Amendment regulates prison conditions at all. "For generations, judges and commentators regarded the Eighth Amendment as applying only to torturous punishments meted out by statutes or sentencing judges, and not generally to any hardship that might befall a prisoner during incarceration." *Hudson v. McMillan,* 503 U.S. 1, 18 (1992) (Thomas, J., dissenting). "[L]ower courts routinely rejected 'conditions of confinement' claims well into this century . . . ." *Helling v. McKinney,* 509 U.S. 25, 39 (1993) (Thomas, J., dissenting). Although we recognize the Supreme Court has extended the Eighth Amendment to remedy egregious prison conditions, *Estelle v. Gamble,* 429 U.S. 97, 102 (1976), we remain mindful that "[t]he Constitution . . . does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quotations and citations omitted). "[B]ecause deprivations of all sorts are the very essence of imprisonment, we made explicit the serious deprivation requirement to ensure that the Eighth Amendment did not transfer wholesale the regulation of prison life from executive officials to judges." *Hudson,* 503 U.S. at 21-22 (emphasis omitted). "The Eighth Amendment is not, and should not be turned into, a National Code of Prison Regulation." *Id.* at 28. It is one thing to countenance Eighth Amendment protection for

We have identified no federal case holding that failure to seatbelt an inmate, standing alone, violates the Eighth Amendment.[7]  The Supreme Court has cautioned that a determination of the objective component of an Eighth Amendment violation

> requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id.* at 36.  If state law in this circuit is any guide to contemporary standards of decency, and we think it is, then clearly the risk of which Dexter complains is not so grave as to amount to an Eighth Amendment violation.[8]

In three states in our circuit (Kansas, Colorado and Oklahoma), the law, other

---

exposure to "sufficiently imminent dangers," *Helling,* 509 U.S. at 34; it is quite another, and a step we decline to take, to extend constitutional protection to exposure to a danger that is inchoate and only tenuously connected to state action.  To do so would require us to extend the reach of the Eighth Amendment from substantial and known risks to indefinable ones.

[7]In finding an Eighth Amendment violation, the district court relied on *Pendleton v. Schroeder,* No. C 980791 FMS, 1998 WL 273000 (N.D. Ca. May 22, 1998).  However, in *Pendleton* the complaint alleged an Eighth Amendment violation based on the *combined* factors of failure to seatbelt *and* a prison practice to transport prisoners in vans arranged convoy-style between other law enforcement vehicles.  *Id.* at *2.  According to the alleged practice, the convoy deliberately operated at high speed to prevent civilian vehicles from merging into it; as a result, when the front vehicle braked unexpectedly, all of the trailing vehicles in the convoy collided with each other in turn.  *Id.* at *1.

[8]We emphasize that we do not suggest the risk of serious injury from an automobile accident is not significantly increased by failure to seatbelt.  We only suggest that failure to seatbelt, standing alone, does not pose a grave risk of serious injury.

than in the case of statutorily defined minor passengers, only requires the driver and front seat passengers to be seatbelted.[9] In Kansas, the law does not even apply to vehicles, like the one here, designed to carry eleven or more passengers.[10] In the remaining three states in the circuit (Utah, Wyoming and New Mexico), although the law requires all occupants of a motor vehicle to be seatbelted, it is the driver's responsibility to assure only his or her own seatbelting and that of statutorily defined minor passengers.[11] In no state in the circuit is a driver required to seatbelt rear-compartment passengers over the age of eighteen. And although the law in each state requires a driver to assure toddlers are secured in child-restraint seats,[12] no comparable statutes require a driver to seatbelt inmates in transit, or any other persons, such as handicapped individuals, otherwise incapable of seatbelting themselves. The absence of state statutes enacted for the protection of passengers helpless to seatbelt themselves, other than in the case of toddlers, speaks mightily to the contemporary

---

[9]Kan. Stat. Ann. § 8-2503; Colo. Rev. Stat. Ann. § 42-4-237; Okla. Stat. Ann. tit. 47, § 12-417.

[10]Kan. Stat. Ann. § 8-2502.

[11]Utah Code Ann. § 41-6-182 (driver must seatbelt passengers up to age sixteen); Wyo. Stat. Ann. § 31-5-1402 (driver must seatbelt passengers under age twelve); N.M. Stat. Ann. § 66-7-372 (driver must seatbelt passengers less than eighteen).

[12]Kan. Stat. Ann. § 8-1344(a); Colo. Rev. Stat. Ann. § 42-4-236; Okla. Stat. Ann. tit. 47, § 11-1112; Utah Code Ann. § 41-6-182(1)(b); Wyo. Stat. Ann. § 31-5-1303; N.M. Stat. Ann. § 66-7-369.

standard of decency they might otherwise announce.[13]  Moreover, there is no federal

statute mandating that the occupants of a motor vehicle, other than federal

employees,[14] be seatbelted.[15]

In the context of this uneven statutory mosaic, and out of a sense of comity, we

are loathe to say unbelted inmates are exposed to risks society chooses not to

---

[13]The absence of laws requiring the seatbelting of inmates for their own protection in the event of an accident may be due to countervailing security concerns.  In *MacCaffray v. United States,* No. 2:97-CV-403, 1998 WL 560047 (D. Vt. Aug. 27, 1998), an inmate was injured in an accident while he was being transported by the U.S. Marshals Service.  There was no federal statute or regulation requiring the Marshals Service to seatbelt inmates in transit.  Instead, the decision as to whether or not to do this was left up to individual U.S. Marshals on a district-by-district basis.

> The decision by the U.S. Marshals Service for the District of Vermont not to install seat belts for prisoners in its transport vehicles was made in the clear exercise of its judgment. Further, the decision was based upon sound safety concerns involving the use by prisoners of the safety belts to break handcuffs and escape, or any attempts to injure deputies who were fastening and releasing their seat belts.

*Id.* at *3.  The district court identified no Eighth Amendment violation in the failure to seatbelt the injured inmate. *Id.* at *5.

[14]Exercising direct authority through executive order, President Clinton enunciated a policy, *inter alia*, to require seatbelt use by federal employees on official business and by persons traveling in national parks.  Exec. Order No. 13,043, 62 Fed. Reg. 19,217 (Apr. 16, 1997).

[15]Federal law is hortatory at best, and not entirely consistent.  It authorizes the Secretary of Transportation to award traffic safety grants to states with laws that forbid operation of a motor vehicle unless the front seat passengers are seatbelted.  23 U.S.C. § 153(a).  Elsewhere, it authorizes grants to implement programs to reduce highway deaths conditioned on state laws requiring the operator to assure all passengers are seatbelted. 23 U.S.C. § 405(b)(1).

tolerate.[16]  As praiseworthy as buckling up may be, we hold that failure to seatbelt an

inmate does not violate the Constitution.[17]  As plead, the amended complaint states a

case of negligence, at most.  *See Farmer,* 511 U.S. at 835 ("Eighth Amendment

liability requires more than ordinary lack of due care for the prisoner's interests or

safety.") (quotation omitted).

### *(B)  Galetka*

In his complaint, Dexter alleges Galetka, as warden of the state prison, knew of

the prison policy to seatbelt inmates and also knew that guards transporting inmates

---

[16]The equivocal posture of state law in our circuit with respect to mandatory seatbelting of some or all occupants of a motor vehicle is further evidenced by common provisions limiting the evidentiary use of failure to seatbelt.  *See* Kan. Stat. Ann. § 8-2504(c) (inadmissible for purposes of determining comparative negligence or mitigation of damages); Colo. Rev. Stat. Ann. § 42-4-237(7) (admissible only to prove failure to mitigate non-economic damages); Okla. Stat. Ann. tit. 47, § 12-420 (inadmissible in any civil action); Utah Code Ann. § 41-6-186 (inadmissible on issues of negligence, injury or mitigation of damage); Wyo. Stat. Ann. § 31-5-1402(f) (inadmissible in any civil action); N.M. Stat. Ann. § 66-7-373 (inadmissible to establish fault or negligence or to limit or apportion damages).  As the Utah Supreme Court has succinctly put it, a limitation like the one expressed in § 41-6-186 "represents a pronouncement of legislative policy around negligence and public safety." *Ryan v. Gold Cross Servs., Inc.,* 903 P.2d 423, 425 (Utah 1995).  "We conclude that the legislature may legitimately set a public policy which encourages seat belt use yet at the same time weigh the positive benefits of such a policy against the severity of the penalties for noncompliance." *Id.* at 428.

[17]This case is easily distinguishable from *DeSpain v. Uphoff,* 264 F.3d 965, 974-75 (10th Cir. 2001) where we held that thirty-six hours' exposure to human waste occasioned by deliberate flooding of prison toilets stated an Eighth Amendment violation.  Likewise, the facts presented here are distinguishable from those presented in *Helling,* 509 U.S. at 33, where exposure to environmental tobacco smoke stated an Eighth Amendment violation (prison officials could not "ignore a condition of confinement that is *sure or very likely to cause* serious illness and needless suffering . . . ." (emphasis added)).

regularly failed to honor it.  Therefore, Dexter claims Galetka is liable under § 1983 for the alleged transgression of Dexter's Eighth Amendment rights by Bosko and Sanns.  This claim fails, however, because "[a] claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised." *Webber v. Mefford,* 43 F.3d 1340, 1344-45 (10th Cir. 1994).[18]

### *(C) State Constitutional Claims*

Dexter alleges that Bosko, Sanns and Galetka violated his rights under the cruel and unusual punishment and unnecessary rigor provisions of the Utah Constitution, as well as its due process clause.  *See* Ut. Const. art. I, § 9 ("Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted.  Persons arrested or imprisoned shall not be treated with unnecessary rigor."); Ut. Const. art. I, § 7 ("No person shall be deprived of life, liberty or property, without due process of law.").  He claims they demonstrated "reckless intent or a deliberate indifference" (Appellant App. [02-4122] at 15) to his health and safety by failing to seatbelt him, and that Bosko, with "reckless intent and deliberate indifference" (*id*.) was speeding and distracted, resulting in an accident and injury.

Because we conclude Bosko, Sanns and Galetka are immune from suit on

---

[18]"At the outset, Appellant admits that if there were no Eighth Amendment violation by the prison guards in this case, then Galetka, as warden[,] cannot be held liable either."  (Appellant Br. [02-4137] at 3.)

Dexter's federal claims, we see no reason to address his state claims.

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) (footnote omitted). *See also Girard v. 94th St. & Fifth Ave. Corp.,* 530 F.2d 66, 72 (2d Cir.) ("[S]ince we have dismissed plaintiff's federal claims for failure to state a cause of action, we will avoid making needless decisions of state law and, exercising our discretion, dismiss [the] pendent state claim.") (quotation omitted), *cert. denied,* 425 U.S. 974 (1976).

### *Conclusion*

As to Dexter's federal claims, we **REVERSE** the district court's order denying qualified immunity to Bosko and Sanns and **AFFIRM** its order awarding qualified immunity to Galetka. We **REMAND** with instructions to the district court to dismiss Dexter's state law claims.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

-16-